# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **MONSTER MOTO, LLC,** | |
| **Plaintiff,** | **Civil Action No. _____** |
| **v.** | |
| **APT GROUP, INC. d/b/a MOTOVOX and APT IP HOLDINGS, LLC,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT

Plaintiff Monster Moto, LLC ("Monster Moto" or "Plaintiff"), hereby files its Complaint against Defendants APT Group, Inc. d/b/a MotoVox ("MotoVox") and APT IP Holdings, LLC ("APTIP") (collectively, "Defendants"), stating as follows:

## I.      INTRODUCTION

1.      This is an action for declaratory judgment of patent invalidity and non-infringement, common law business disparagement, tortious interference with contract, tortious interference with business expectancy, false advertising under the Lanham Act, and common law unfair competition.

2.      Monster Moto brings this action (a) to recover damages caused by Defendants' tortious conduct, (b) to obtain preliminary and permanent injunctive relief prohibiting Defendants from making false and defamatory statements regarding Monster Moto to Monster Moto's customers and the marketplace as a whole and from tortiously interfering with Monster Moto's existing and prospective contracts, and (c) to obtain a declaratory judgment of invalidity

and non-infringement regarding the design patent that Defendants have falsely accused Monster Moto of infringing.

## II.  THE PARTIES

3.      Plaintiff Monster Moto is a Texas limited liability company, with its principal place of business at 1001 South Jupiter Road, Garland, Texas 75042.

4.      Defendant MotoVox is a Missouri corporation, with its principal place of business at 8844 Hillcrest Road, Kansas City, Missouri 64138.

5.      Defendant APTIP is a Wyoming limited liability company, with its principal place of business at 8844 Hillcrest Road, Kansas City, Missouri 64138.

## III.  JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because it arises under the patent laws of the United States.  This Court further has subject matter jurisdiction over this action under 15 U.S.C. § 1121.  This Court also has supplemental jurisdiction over this action under 28 U.S.C. § 1367.  Further, and in the alternative, this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332(a)(1) and (c)(1) because Plaintiff Monster Moto and Defendants MotoVox and APTIP are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Monster Moto's claims occurred in this District.

8.      Personal jurisdiction exists over Defendants due to their continuous and systemic contacts with the State of Texas, including but not limited to their commission of torts in this State as alleged in this Complaint.  For example, Defendants have made several false disparaging

accusations regarding Monster Moto -- upon which numerous claims in this lawsuit are based – to Texas residents.  Moreover, Defendants have purposefully availed themselves of the privilege of conducting business in the State of Texas.  Monster Moto's claims arise out of or relate to Defendants' forum-related activities, and it is reasonable for the Court to exercise personal jurisdiction over Defendants.

## IV.    <u>FACTS</u>

9.      Defendant APTIP claims to be the owner by assignment of U.S. Design Patent No. D689,798 (the "'798 patent").  Defendant MotoVox claims to be a licensee of the '798 patent.  A true and correct copy of the '798 patent is attached hereto as **Exhibit A**.

10.      Defendants have falsely accused Monster Moto of infringing the '798 patent by making, selling, using, importing and/or offering to sell the Monster Moto MMB-80 minibike within the United States.  A true and correct copy of a photograph of Monster Moto's MMB-80 minibike is attached hereto as **Exhibit B**.

11.      In particular, Defendants have pointed to the frame design of the MMB-80 minibike as a purported infringement of the '798 patent, despite the fact that the two designs are plainly different.  *See* **Exhibit C** hereto, a true and correct copy of a comparison of the frame of Monster Moto's MMB-80 with the frame of Defendants' MBX10 minibike frame (which purportedly embodies the '798 patent).

12.      Defendants have also based their claims of design patent infringement on purported similarities between the handlebars, fenders, foot pegs, engines, seat, and kickstands of the MMB-80 minibike and the '798 patent, despite the fact that these are all functional components of a minibike not entitled to design patent protection.  Moreover, to the dubious extent there is any protectable ornamental design with respect to these components, it differs between the MMB-80 minibike and the '798 patent.

13.    In any event, the '798 patent is itself invalid for a variety of reasons – namely, lack of novelty, obviousness and functionality.  The '798 patent improperly claims numerous purely functional elements of a minibike and is invalid on that basis.  *See* **Exhibit A** hereto (claiming design patent protection for entirety of minibike).

14.    In addition, as depicted below, the purportedly revolutionary teardrop frame design as well as other design aspects of Defendants' MBX minibikes were disclosed by the Savage minibike as far as back as 1961:


Motovox MBX10 Frame


1960's Savage Mini-Bike Frame




A true and correct copy of an advertisement for the Savage minibike in the December 1961 issue of *Desert* magazine is attached hereto as **Exhibit D**.  True and correct copies of additional photographs of the 1960's-era Savage minibike are attached hereto as **Exhibit E**.

15.    Indeed, all of the purported ornamental elements of the '798 patent are in the prior art.  For example, the design of the Baja Doodlebug minibike, which has been on sale since at least 2004, includes design elements, such as the fenders, that are substantially similar, if not identical, to the '798 patent.   A true and correct copy of a photograph of the Baja Doodlebug minibike is attached hereto as **Exhibit F**.

16.    A cursory comparison of the '798 patent, Defendants' MBX series of minibikes (which purport to embody the '798 patent), the Monster Moto MMB-80, and a number of other

competing minibikes in the marketplace demonstrates nothing more than the fact that minibikes all share a number of similar characteristics for obvious and unavoidable functional reasons. To the extent that the '798 patent includes any ornamental aspects, such aspects are disclosed in the prior art and/or differ from the Monster Moto MMB-80.

17.     Further, Defendants have falsely accused Monster Moto of misappropriating their purported trade secrets, tortiously interfering with their contracts and business expectancy, and violating their alleged trade dress and trademark rights under the Lanham Act.

18.     Among other things, Defendants contend that the identity of their customers -- namely, retailers such as Sears, Kmart, Costco, and Alco -- is somehow a trade secret that belongs to them, despite the fact that the identity of these extraordinarily well-known companies (and the fact that they sell minibikes) is a secret to no one.

19.     Similarly, Defendants contend that the identity of their (former) Chinese manufacturer is somehow a trade secret, despite the fact that such information is readily available to anyone in the industry.

20.     In addition, Defendants have asserted that they have trade secrets in the design or manufacture of their minibikes, despite the fact that there is nothing novel in the design or manufacture of Defendants' minibikes.

21.     All of Defendants' false accusations against Monster Moto revolve around the Monster Moto MMB-80, which was independently developed by Monster Moto and its employees and contractors, based on their years of experience in the minibike industry. The MMB-80 was developed without reference to any of Defendants' alleged trade secrets. Indeed, no trade secrets were necessary as the information necessary to design, manufacture, and sell the MMB-80 was well within the knowledge of Monster Moto, its employees and contractors.

While certain of Defendants' former employees or contractors[1] have worked on behalf of Monster Moto, each of these individuals signed a document pledging that they would not use any confidential or proprietary information obtained from Defendants in their work on behalf of Monster Moto (and, as set forth above, there is nothing novel, confidential or secret regarding Defendants' minibikes in any event).

22.     Defendants also contend that their trade dress is infringed by Monster Moto because, among other things, the box in which the Monster Moto MMB-80 is packaged includes instructions that read "DO NOT LAY FLAT" and "THIS SIDE UP."  The absurdity of this claim is apparent as similar instructions appear on virtually all boxes of this type.

23.     Despite the above incontrovertible facts, Defendants have knowingly and with malice made numerous false accusations about Monster Moto to Monster Moto's customers.  For example, Defendants have contacted Monster Moto's current and potential customers and made false allegations of intellectual property infringement against Monster Moto.  Defendants' false accusations have caused Monster Moto's customers to stop or delay doing business with Monster Moto, causing Monster Moto to lose sales.

24.     Defendants have made these accusations, knowing that they are false, with malice and intent to unfairly injure Monster Moto's standing with its customers and the marketplace as a whole.  Such statements have been designed expressly to damage Monster Moto and its business.

25.     Moreover, on June 17, 2014, Defendants filed a lawsuit against Monster Moto and several other Defendants in the United States District Court for the Western District of Missouri, Case No. 4:14-cv-546, accusing Monster Moto of, *inter alia*, infringement of the '798

---

[1]     A number of Defendants' former employees and contractors left their employ because Defendants failed to pay them.  In fact, one former contractor, Olen Rice and his company, Northern Group, Inc., have sued MotoVox in Wisconsin State Court on June 26, 2013, for failure to pay compensation and commissions owed.  *See Olen Rice v. APT Powersport and Utility Products, LLC and American Performance Technologies, LLC,* Wisconsin Circuit Court Case No. 13-CV-1031, and *Northern Group, Inc. v. APT Powersport and Utility Products, LLC*, Wisconsin Circuit Court Case No. 13-CV-1032.

patent, trade secret misappropriation, trade dress infringement, trademark infringement, tortious interference with business expectancies, and intentional interference with contract.

26.     Defendants have cited to this filing in communications to Monster Moto's current and potential customers, and the marketplace as a while, in a transparent bid to steal Monster Moto's business.  *See, e.g.,* **Exhibit G** hereto, a true and correct copy of Defendants' July 15, 2014 press release regarding Defendants' filing of a lawsuit and motion for preliminary injunction.   Further, Defendants have mischaracterized the Court documents they have forwarded to Monster Moto's customers.

27.     However, although Defendants purport to seek preliminary injunctive relief, they have not even served summons and complaint on Monster Moto as of July 18, 2014 – over a month after filing suit.  Yet, as set forth above, Defendants have trumpeted their filing of the suit to the marketplace and Monster Moto's customers for the purpose of interfering with Monster Moto's business relationships.  This further demonstrates that Defendants have not made their accusations against Monster Moto with any basis or proper purpose, but, instead, seek to smear Monster Moto's reputation without foundation or accountability.

**Count I:  Declaratory Judgment of Non-Infringement of the '798 Patent**

28.     Plaintiff Monster Moto repeats, reiterates, and re-alleges the allegations set forth in the preceding Paragraphs as if fully set forth herein.

29.     Defendants contend that Monster Moto infringes the '798 patent by making, using, selling, offering for sale, and/or offering for sale the MMB-80 minibike within the United States.

30.     Monster Moto's making, using, selling, offering for sale, and/or offering for sale of the MMB-80 minibike does not, has not, and will not infringe any valid and enforceable claim of the '798 patent.  By way of example and not limitation, there is no substantial similarity

between the MMB-80 minibike and the '798 patent such that the ordinary observer with knowledge of the prior art would be deceived, inducing him to purchase one supposing it to be the other.  Rather, any similarities are merely a function of the fact that both are minibikes.  In fact, cursory review of the minibike market reveals that there are a plethora of minibikes that have somewhat similar designs, as minibike design is necessarily limited to a great degree by functional considerations.   Viewed properly in context, any allegedly protectable ornamental aspects of the MMB-80 minibike design -- in particular, its frame design -- are entirely dissimilar from the '798 patent, in whole and in part.

31.     An actual and justiciable controversy exists between Monster Moto and Defendants regarding noninfringement of the '798 Patent.

32.     Monster Moto is entitled to a declaratory judgment that it has not infringed and does not infringe any valid and/or enforceable claim of the '798 Patent.

33.     This is an exceptional case entitling Monster Moto to an award of attorneys' fees incurred in connection with this action under 35 U.S.C. § 285.

**Count II:  Declaratory Judgment of Invalidity of the '798 Patent**

34.     Plaintiff Monster Moto repeats, reiterates, and re-alleges the allegations set forth in the preceding Paragraphs as if fully set forth herein.

35.     The claims of the '798 patent are invalid for failing to meet the conditions of patentability set forth in 35 U.S.C. § 101 et seq., including but not limited to sections 102, 103 and 171.

36.     The claims of the '798 patent are invalid under 35 U.S.C. §§ 102 and 103 because, at a minimum and without limitation, they are neither novel nor nonobvious in light of existing prior art.

37.     Further, the claims of the '798 patent are invalid under 35 U.S.C. § 171 because they are primarily functional, not ornamental, in nature, and, therefore, are not "new, original, and ornamental," as required by the statute.

38.     An actual case or controversy exists between Monster Moto and Defendants as to whether the '798 patent is invalid.

39.     A judicial declaration is necessary and appropriate so that Monster Moto may ascertain its rights as to whether the '798 patent is invalid.

40.     Monster Moto is entitled to a declaratory judgment that the '798 patent is invalid.

41.     This is an exceptional case entitling Monster Moto to an award of attorneys' fees incurred in connection with this action under 35 U.S.C. § 285.

### Count III:  Common Law Business Disparagement

42.     Plaintiff Monster Moto repeats, reiterates, and re-alleges the allegations set forth in the preceding Paragraphs as if fully set forth herein.

43.     As set forth above, Defendants have published disparaging words regarding Monster Moto and its business to Monster Moto's customers, potential customers and to the market at large.

44.     Defendants' disparaging words regarding Monster Moto have been false. Defendants have known that their disparaging words were false, and made such statements in bad faith.

45.     Defendants published disparaging words regarding Monster Moto with malice, intent to harm Monster Moto, and in a manner calculated to prevent others from dealing with Monster Moto.

46.     Defendants lacked any privilege or justification to make the disparaging statements regarding Monster Moto.

47.     As a direct and proximate result of Defendants' publication of false, disparaging words regarding Monster Moto, Monster Moto has suffered special damages in the form of actual economic harm.  Among other things, Monster Moto has been forced to expend resources to defend itself and correct Defendants' false statements, has lost business, and has suffered damaged to its good will and reputation.

48.     As a direct and proximate result of Defendants' disparagement, Monster Moto has sustained actual damages in an amount to be proven at trial.

49.     In addition, Monster Moto has suffered and will continue to suffer irreparable harm as a proximate result of Defendants' conduct.  Monster Moto has no adequate remedy at law to protect it from such irreparable harm.  Such irreparable harm will continue and increase unless Defendants are preliminarily and permanently enjoined from their unlawful conduct.

50.     Defendants have engaged in outrageous, aggravated, malicious and/or fraudulent conduct, thereby entitling Monster Moto to punitive damages.

### Count IV:  Tortious Interference with Contract

51.     Plaintiff Monster Moto repeats, reiterates, and re-alleges the allegations set forth in the preceding Paragraphs as if fully set forth herein.

52.     Plaintiff Monster Moto is a party to a number of contracts with its customers which are subject to interference.

53.     By making false statements regarding Monster Moto and its business, Defendants have engaged in willful and intentional acts of interference.

54.     Defendants' tortious interference has proximately caused damages to Monster Moto.

55.     Monster Moto has suffered actual damage and loss due to Defendants' interference.  As set forth above, Monster Moto has been forced to expend resources to defend

itself and correct Defendants' false statements, has lost business, and has suffered damaged to its good will and reputation.

56.     In addition, Monster Moto has suffered and will continue to suffer irreparable harm as a proximate result of Defendants' conduct.  Monster Moto has no adequate remedy at law to protect it from such irreparable harm.  Such irreparable harm will continue and increase unless Defendants are preliminarily and permanently enjoined from their unlawful conduct.

57.     Defendants have engaged in outrageous, aggravated, malicious and/or fraudulent conduct, thereby entitling Monster Moto to punitive damages.

## Count V:  Tortious Interference with Business Expectancy

58.     Plaintiff Monster Moto repeats, reiterates, and re-alleges the allegations set forth in the preceding Paragraphs as if fully set forth herein.

59.     Monster Moto has had a reasonable probability that it would enter into a business relationship with potential customers and additional business relationships with its current customers.

60.     Defendants have performed intentional, malicious interventions and engaged in independently tortious or unlawful actions, including the making of false and/or fraudulent statements, with a conscious desire to prevent Monster Moto's business relationships from occurring and/or with knowledge that the interference was certain or substantially likely to occur as a result of their conduct.

61.     Defendants have lacked any privilege or justification for their actions in this regard.

62.     Monster Moto has suffered actual harm or damages as a result of the Defendants' interference.  As set forth above, Monster Moto has been forced to expend resources to defend

itself and correct Defendants' false statements, has lost business, and has suffered damaged to its good will and reputation.

63.     In addition, Monster Moto has suffered and will continue to suffer irreparable harm as a proximate result of Defendants' conduct.  Monster Moto has no adequate remedy at law to protect it from such irreparable harm.  Such irreparable harm will continue and increase unless Defendants are preliminarily and permanently enjoined from their unlawful conduct.

64.     Defendants have engaged in outrageous, aggravated, malicious and/or fraudulent conduct, thereby entitling Monster Moto to punitive damages.

**Count VI:  False Advertising Under Lanham Act (15 U.S.C. § 1125(a))**

65.     Plaintiff Monster Moto repeats, reiterates, and re-alleges the allegations set forth in the preceding Paragraphs as if fully set forth herein.

66.     Defendants made false or misleading statements of fact in a commercial advertisement and promotion about their own products and/or Monster Moto's products.

67.     These statements actually deceived and/or had the tendency to deceive a substantial segment of its audience: the audience being potential customers of minibikes.

68.     Defendants' deception was material, in that it was likely to influence purchasing decisions.

69.     Defendants caused the statements to enter interstate commerce.

70.     Monster Moto has been and is likely to continue to be injured as a result of the statements by loss of sales and profits, damage to its reputation, expenditures incurred to correct the false and/or misleading statements made, and by lessening of goodwill associated with Monster Moto's products.

71.     As a result of Defendants' acts alleged herein, Monster Moto has suffered and continues to suffer irreparable harm as a proximate result of Defendants' false and deceptive

advertising.  Monster Moto has no adequate remedy at law to protect it from such irreparable harm.  Such irreparable harm will continue and increase unless Defendants are preliminarily and permanently enjoined from their unlawful conduct.

72.     Monster Moto is entitled to damages to be proven at trial.

73.     Under the Lanham Act, Monster Moto is entitled to trebled damages, the cost of the action, and injunctive relief.

74.     This case is exceptional warranting an award of attorneys' fees under 15 U.S.C. § 1117(a).

### Count VII:  Common Law Unfair Competition

75.     Plaintiff Monster Moto repeats, reiterates, and re-alleges the allegations set forth in the preceding Paragraphs as if fully set forth herein.

76.     Defendants have engaged in business conduct which is contrary to honest practice in commercial matters.  Defendants' unfair and illegal facts have interfered with Monster Moto's ability to conduct its business.

77.     Defendants have made false or misleading statements of fact to Monster Moto's customers and potential customers in order to promote its products and to disparage Monster Moto and its products.

78.     Defendants made these statements without a reasonable factual or legal basis in an effort to undermine Monster Moto's position in the marketplace and to unfairly gain a competitive advantage over Monster Moto.

79.     These statements actually deceived and/or had the tendency to deceive a substantial segment of its audience; the audience being customers and potential customers of minibikes.

80.     Defendants' deception was material, in that it was likely to influence purchasing decisions.

81.     Monster Moto has been and is likely to continue to be injured as a result of the statements by loss of sales and profits, damage to its reputation, expenditures incurred to correct the false and/or misleading statements, and by lessening of goodwill associated with its products.

82.     Upon information and belief, as a result of Defendants' acts alleged herein, minibike customers and potential customers are suffering harm because fewer options will be available in the marketplace and prices will be artificially high if Defendants are allowed to exclude others such as Monster Moto from the marketplace through its unfair competition.

83.     Monster Moto is entitled to damages to be proven at trial.

84.     In addition, Monster Moto has suffered and will continue to suffer irreparable harm as a proximate result of Defendants' unfair competition.  Monster Moto has no adequate remedy at law to protect it from such irreparable harm.  Such irreparable harm will continue and increase unless Defendants are preliminarily and permanently enjoined from their unlawful conduct.

85.     Defendants have engaged in outrageous, aggravated, malicious and/or fraudulent conduct, thereby entitling Monster Moto to punitive damages.


## V.     JURY DEMAND

86.     Plaintiff Monster Moto demands a jury trial.

## VI.    REQUEST FOR RELIEF

For all the foregoing reasons, Plaintiff Monster Moto prays this Honorable Court issue citation for the Defendants MotoVox and APTIP to appear and answer, and that this Court enter judgment in favor of Plaintiff Monster Moto against Defendants MotoVox and APTIP for:

1.    actual damages;

2.    punitive damages;

3.    trebled damages under the Lanham Act;

4.    declaratory judgment that Monster Moto has not infringed the '798 patent;

5.    declaratory judgment that the '798 patent is invalid;

6.    preliminary and permanent injunctive relief enjoining Defendants from (a) making false disparaging statements regarding Monster Moto, its business and products; (b) tortiously interfering with Monster Moto's existing or future contracts; (c) engaging in false advertising regarding Defendants' and Monster Moto's products; and (d) unfairly competing with Monster Moto.

7.    attorneys' fees pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117(a);

8.    costs of suit;

9.    pre- and post-judgment interest; and

10.    such other and further relief, general or special, at law or in equity, to which Plaintiff Monster Moto may show itself justly entitled.

Date:       July 21, 2014

/s/ Keith J. Grady
Keith J. Grady (46757MO)
**Polsinelli PC**
100 S. Fourth Street
Suite 1000
St. Louis, MO  63102
(p) 314-889-8000
(f) 314-231-1776
kgrady@polsinelli.com

William H. Church, Jr. (04248020TX)
**Polsinelli PC**
2501 N. Harwood
Suite 1900
Dallas, TX  75201
(p) 214-397-0030
(f) 214-853-5248
bchurch@polsinelli.com

Graham L.W. Day
**Polsinelli PC**
100 S. Fourth Street
Suite 1000
St. Louis, MO  63102
(p) 314-889-8000
(f) 314-231-1776
gday@polsinelli.com

**ATTORNEYS FOR PLAINTIFF**
**MONSTER MOTO, LLC**

48430427